IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN L. BALLARD,<br><br>  Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONS, DEC/LCC Prisons; TAGGERT BOYD, CORPRAL THURMAN, and DR. DANAHER,<br><br>  Defendants. | 4:20CV3046<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiff, Kevin L. Ballard ("Ballard"), a state prisoner currently incarcerated at the Tecumseh State Correctional Institution, filed his Complaint on April 27, 2020. (Filing No. 1.) Ballard has been granted leave to proceed in forma pauperis. (Filing No. 6.) Now that he has paid the required initial partial filing fee, the court conducts an initial review of Ballard's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

I. SUMMARY OF COMPLAINT

Plaintiff is bringing suit under 42 U.S.C. § 1983 regarding an incident that occurred on June 6, 2019, while he was confined at the Diagnostic and Evaluation Center ("DEC") in Lincoln, Nebraska. Ballard claims a correctional officer used excessive force in breaking up an altercation between himself and another inmate, causing him to suffer a broken hand and a traumatic head injury. Plaintiff also claims he did not receive adequate medical treatment for his injuries at DEC or when he was subsequently transferred to the adjacent Lincoln Correctional Center ("LCC"). Named as Defendants are the Nebraska Department of Corrections ("NDCS")[1] and

---

[1] The agency's proper name is the Department of Correctional Services. *See* Neb. Rev. Stat. § 83-171.

three of its employees: Taggert [*sic*] Boyd (the warden of DEC and LCC),[2] Corpral [*sic*] Thurman (whom Ballard identifies as a "prison guard" at DEC), and Dr. Danaher (whom Ballard identifies as a "prison doctor" at LCC). The NDCS employees are sued both in their official and individual capacities.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an

---

[2] The correct spelling of Warden Boyd's first name is Taggart.

allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION OF CLAIMS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In this case, Ballard is claiming Defendants violated is rights under the Eighth Amendment. However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Webb v. Nebraska*, No. 8:19CV416, 2019 WL 5684393, at *4 (D. Neb. Nov. 1, 2019) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "In addition, the Eleventh Amendment bars claims for damages that are brought in federal court by private parties against a state, a state instrumentality, or a state employee who is sued in his or her official capacity." *Id.* (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995)).

Accordingly, all claims alleged against NDCS and all official-capacity claims alleged against the NDCS employees must be dismissed. Only individual-capacity claims alleged against NDCS employees are potentially maintainable under § 1983.

### A. Excessive Force

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley v. Albers*,

475 U.S. 312, 319 (1986)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* (quoting *Whitley*, 475 U.S. at 321).

Ballard alleges he was involved in an altercation with another inmate in the DEC yard on the morning of June 6, 2019. In breaking up the fight, one corrections officer (not named as a defendant) allegedly sprayed Ballard in the face with mace, and then Cpl. Thurman allegedly took him to the ground with a "football tackle." Ballard alleges he broke his hand when he tried to brace himself for the fall. Ballard also alleges Thurman next "placed [him] on all fours and bashed [his] head into the concrete." He claims "Thurman lost total control of himself." In addition to the broken hand, Ballard alleges he suffered a traumatic head injury which has left him wheelchair dependent because of severe vertigo.

The foregoing factual allegations are sufficient to state a plausible excessive-force claim against Defendant Thurman in his individual capacity. However, to the extent Ballard may also be seeking to hold Warden Boyd personally liable for the alleged use of excessive force by Thurman or the other officer, no plausible claim for relief is stated.

A prison official, such as Warden Boyd, "may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Ambrose v. Young,* 474 F.3d 1070, 1079 (8th Cir.2007)). A prison official, nonetheless, violates the Eighth

4

Amendment by failing to protect an inmate from a substantial risk of serious harm to the inmate. *Id.* (citing *Blades v. Schuetzle,* 302 F.3d 801, 803 (8th Cir. 2002)).

"A violation of the Eighth Amendment based on a failure to protect has two parts. First, the conditions that result from the failure to protect the inmate must pose a substantial risk of serious harm to the inmates…. Second, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This requisite state of mind is akin to recklessness, which is "more blameworthy than negligence," yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmates. *See id.,* 511 U.S. at 835.

While Ballard alleges that Cpl. Thurman "lost his head" because he and other officers were working a lot of overtime due to overcrowding and understaffing at NDCS, which made them "very touchy and hot headed," this speculative and conclusory allegation does not create a reasonable inference that Warden Boyd was deliberately indifferent to a substantial risk of harm to the inmates at DEC. *See, e.g., Wabashaw v. Gage*, No. 4:14CV3213, 2015 WL 4629159, at *3 (D. Neb. Aug. 3, 2015) ("[The plaintiff's] conclusory allegations of overcrowding are too vague and general to support a conclusion that overcrowding at the [prison] led to his assault."), *aff'd sub nom. Wabashaw v. Kenny*, 653 F. App'x 854 (8th Cir. 2016).

### B. Inadequate Medical Care

The Eighth Amendment's prohibition on cruel and unusual punishment also protects prisoners from deliberate indifference to objectively serious medical needs. *See Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). An objectively serious

medical need is one "diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks omitted). A plaintiff claiming deliberate indifference must show an objectively serious medical need that the "defendant actually knew of, but deliberately disregarded." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray,* 557 F.3d 904, 908 (8th Cir.2009) (internal quotation omitted). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013) (internal quotation marks and citations omitted).

Ballard alleges he was taken to the hospital at DEC immediately after the incident, where the nurses cleaned his wounds and made him stay awake because of this head injury. Because the DEC doctor was not at work that day, Ballard was moved to LCC. However, he was not seen by a doctor at LCC until the following Wednesday for sick call. Ballard alleges his broken hand was not x-rayed and no CT was scheduled for his head injury, even though he could not stand or walk without vomiting. Ballard stayed at LCC for 3 weeks before being moved back to DEC, where the doctor ordered a CT scan at a hospital emergency room and diagnosed severe vertigo. Ballard was hospitalized at DEC for 4 months, but alleges he has continuing health problems and a deformed hand that had to heal on its own.

Ballard does not directly allege that Dr. Danaher was deliberately indifferent to his serious medical needs, nor are the facts he alleges sufficient to support such a claim. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). In other words, merely alleging facts indicating that a prison doctor committed medical malpractice is not enough. *See Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014).

"An inmate must demonstrate that a prison doctor's actions were 'so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.'" *Id.*, at 1066 (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1240-41 (8th Cir. 1997)).

Also, as with the excessive-force claim, there are not sufficient facts alleged to state a valid § 1983 claim against Warden Boyd regarding the lack of medical care at DEC or LCC. *See McGrone v. Boyd*, No. 8:18CV233, 2019 WL 2583841, at *4 (D. Neb. June 24, 2019) ("Plaintiff does not allege that Boyd was personally involved in the provision of any medical treatment to Plaintiff nor does he allege facts suggesting that Boyd failed to correct any known deficiencies in Plaintiff's medical treatment."). On the court's own motion, however, Randall shall be given leave to file an amended complaint that alleges a plausible claim of deliberate indifference to serious medical needs against Warden Boyd or specific individuals involved in his medical care at DEC or LCC, such as Dr. Danaher.

Finally, Cpl. Thurman is not alleged to have been deliberately indifferent to Ballard's medical needs following the alleged excessive use of force. Ballard was taken to the DEC hospital, and there are no facts suggesting that Cpl. Thurman or any other corrections officer was required to take further action.

## IV. CONCLUSION

The court finds on initial review of Ballard's Complaint that a plausible claim for relief is stated against Defendant Corpral Thurman, in his individual capacity, for his alleged use of excessive force. Before the court directs the clerk to issue summons for service on this defendant, however, it will give Ballard an opportunity to file an amended complaint to allege an actionable Eighth Amendment claim for deliberate indifference to his medical needs.

IT IS THEREFORE ORDERED:

1. The following Defendants and claims shall be dismissed or proceed further as specified below:

a. Defendant Nebraska Department of Corrections, DEC/LCC Prisons, is dismissed from this case with prejudice and without leave to amend.
b. Defendants Taggert Boyd, Corpral Thurman, and Dr. Danaher, <u>in their official capacities only</u>, are dismissed from this case with prejudice and without leave to amend.
c. Plaintiff is granted leave to file an amended complaint to state a plausible Eighth Amendment claim of deliberate indifference to his medical needs against Defendants Taggert Boyd and Dr. Danaher, in their individual capacities, or against other specific individuals who were involved in his medical care at DEC or LCC.
d. For purposes of initial review only, Plaintiff has stated a viable Eighth Amendment excessive force claim against Corporal Thurman in his individual capacity.

2. Plaintiff shall have until **July 17, 2020**, to file an amended complaint in accordance with this Memorandum and Order. **If Plaintiff decides to file an amended complaint, Plaintiff must include all of the claims he wishes to pursue against all of the defendants he wishes to proceed against in the amended complaint. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him.**
3. In the event Plaintiff files an amended complaint, he shall restate the allegations of the current Complaint (Filing No. 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. **Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint.**
4. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.
5. If Plaintiff elects not to file an amended complaint, then the court shall enter an order directing the clerk's office to issue summons to Corporal Thurman.
6. The clerk of the court is directed to set a pro se case management deadline using the following text: **July 17, 2020**: check for amended complaint.

8

7. The clerk's office is directed to remove from this action the following Defendants:
    a. Nebraska Department of Corrections, DEC/LCC Prisons;
    b. Taggert Boyd, in his official capacity only;
    c. Corpral Thurman, in his official capacity only; and
    d. Dr. Danaher, in his official capacity only.
8. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 17th day of June, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge