IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN L. BALLARD,<br><br>Plaintiff,<br><br>vs.<br><br>TAGGART BOYD, COUNSELOR THURMAN, and DOCTOR DANAHER,<br><br>Defendants. | 4:20CV3046<br><br>**MEMORANDUM AND ORDER** |

Plaintiff, Kevin L. Ballard ("Ballard"), a state prisoner currently incarcerated at the Tecumseh State Correctional Institution, filed a pro se Complaint on April 27, 2020. (Filing No. 1.) The court conducted an initial review of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and, in a Memorandum and Order entered on June 17, 2020, determined that a plausible claim for relief was stated against one named defendant sued in his individual capacity, but that other claims were subject to dismissal. The court on its own motion gave Ballard leave to amend.[1] (Filing No. 9.) Ballard elected to do so, and timely filed an Amended Complaint on July 27, 2020. (Filing No. 14.) The court now conducts and initial review of the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

I. SUMMARY OF AMENDED COMPLAINT

Ballard is bringing suit under 42 U.S.C. § 1983 regarding an incident that occurred on June 6, 2019, while he was confined at the Nebraska Diagnostic and Evaluation Center ("DEC") in Lincoln, Nebraska. Ballard claims a counselor at DEC, Counselor Thurman ("Thurman"), used excessive force in the aftermath of an

---

[1] The Nebraska Department of Correctional Services ("NDCS") and NDCS employees sued in their official capacities were dismissed from the case with prejudice and without leave to amend.

altercation between Ballard and another inmate, causing Ballard to suffer a broken hand and a traumatic head injury. Ballard alleges that Thurman has a history of violence towards inmates, and that the DEC Warden, Taggart Boyd ("Boyd"), failed to protect Ballard from Thurman. Ballard also claims he did not receive adequate medical treatment for his injuries when he was transferred to the adjacent Lincoln Correctional Center ("LCC") and seen only once by Doctor Danaher ("Danaher").

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the

district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION OF CLAIMS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In this case, Ballard is claiming Defendants Thurman, Boyd, and Danaher violated his rights under the Eighth Amendment. Defendants are being sued in their individual capacities only.

#### A. Excessive Force (Defendant Thurman)

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* (quoting *Whitley*, 475 U.S. at 321).

3

Ballard alleges another inmate attacked him in the DEC recreation yard on the morning of June 6, 2019, and he was forced to defend himself. Unit staff called for back-up to break up the altercation. When security staff arrived, chemical agents were deployed, and Ballard broke off from the altercation and surrendered himself to staff. Before staff were able to place Ballard in restraints, Defendant Thurman forcefully grabbed Ballard, lifted him, and slammed him to the ground, breaking Ballard's hand and jarring his neck in the process. Thurman is approximately 6 feet 8 inches tall and weighs approximately 300 pounds, whereas Ballard stands 5 feet 9 inches and weighs 175 pounds. When Ballard cried out that his hand was broken, Thurman became enraged and forcefully slammed Ballard's head into the ground. (Filing No. 14, ¶ 6.) Ballard further alleges:

> Thurman's actions were not necessary to his duties in breaking up the fight between Ballard and the other inmate, because other staff had already gained control of the situation through the use of chemical agents. Ballard had already ceased his defensive actions toward the other inmate and was in the process of surrendering himself when Thurman forcefully grabbed him and took him to the ground. Moreover, Thurman's actions after Ballard was taken to the ground, to wit, forcefully slamming Ballard's head into the ground, served no purpose other than to inflict pain and cause harm.

(Filing No. 14, ¶ 17 (spelling corrected).) The court finds and concludes for purposes of initial review that the foregoing allegations contain sufficient facts to state a plausible § 1983 claim against Defendant Thurman for the use of excessive force, in violation of Ballard's Eighth Amendment rights.

### B. Failure to Protect (Defendant Boyd)

A prison official, such as Warden Boyd, "may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Ambrose v. Young,* 474 F.3d 1070, 1079 (8th Cir.2007)). A prison official, nonetheless, violates the Eighth Amendment by failing to protect an inmate from a substantial risk of serious harm to the inmate. *Id.* (citing *Blades v. Schuetzle,* 302 F.3d 801, 803 (8th Cir. 2002)).

4

"A violation of the Eighth Amendment based on a failure to protect has two parts. First, the conditions that result from the failure to protect the inmate must pose a substantial risk of serious harm to the inmates…. Second, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This requisite state of mind is akin to recklessness, which is "more blameworthy than negligence," yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmates. *See id.,* 511 U.S. at 835.

Ballard alleges: "NDCS records indicate that Thurman has been the subject of a significant number of complaints for excessive force, and that Boyd knew of or should have known of but failed to take action to rectify. Boyd did not take action to train Thurman in proper techniques for inmate restraint, and Boyd did not reprimand Thurman for his numerous excessive force complaints. Boyd was deliberately indifferent to the conditions within the facility as a result of Thurman's violent tendencies." (Filing No. 14, ¶ 13 (spelling corrected).) Ballard further alleges:

> Boyd's actions in failing to protect Ballard from Thurman likewise violate the Eighth Amendment, because Boyd knew of Thurman's history of violence toward inmates and took no action to protect the inmate population from Thurman. Boyd was aware that Thurman had been the subject of an inordinate number of complaints for excessive force, yet Boyd disregarded those complaints and permitted Thurman to continue in a capacity without proper training that placed him in contact with inmates. Moreover, Boyd was aware at the time of the incident that the staff under his control was working excessive overtime, and that staff members had been exhibiting symptoms of stress and aggravation. Boyd was indifferent to these warning signs,

5

> permitting Thurman to work excessive numbers of hours and continue to work despite showing signs of stress and aggression.

(Filing No. 14, ¶ 18 (spelling corrected).) The court finds and concludes that the foregoing allegations contain sufficient facts to state a plausible § 1983 claim against Defendant Boyd for deliberate indifference in failing to protect Ballard from the use of excessive force, in violation of Ballard's Eighth Amendment rights.

### C. Inadequate Medical Care (Defendant Danaher)

The Eighth Amendment's prohibition on cruel and unusual punishment also protects prisoners from deliberate indifference to objectively serious medical needs. *See Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). An objectively serious medical need is one "diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks omitted). A plaintiff claiming deliberate indifference must show an objectively serious medical need that the "defendant actually knew of, but deliberately disregarded." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray,* 557 F.3d 904, 908 (8th Cir.2009) (internal quotation omitted). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013) (internal quotation marks and citations omitted).

Ballard alleges he was taken to the Specialized Nursing Facility ("SNF") at DEC after the incident, where he was informed there were no doctors on site to treat him. He was then placed in a holding cell for several hours before being moved to LCC and placed in disciplinary segregation. (Filing No. 14, ¶ 7.) Ballard alleges he did not receive requested medical treatment until June 9, 2019, when he was seen by Doctor Danaher. "Danaher did not order an x-ray of Ballard's hand. Danaher did not

order a scan of Ballard's head. Nothing was done to determine the true extent of Ballard's injuries. Danaher provided Ballard with an ice pack and ordered him to be returned to his cell." (Filing No. 14, ¶ 8.) Ballard alleges he experienced bouts of severe nausea and vertigo, had excruciating headaches, and was unable to walk without an assistive device. Ballard advised LCC staff of these symptoms, but received no medical attention. (Filing No. 14, ¶ 9.) Ballard alleges that on June 27, 2019, a physician at DEC, Dr. Houstead, learned of his condition and ordered that Ballard be taken to the emergency department at Bryan West Hospital. A head scan was performed and Ballard was diagnosed with severe vertigo resulting from head trauma. Dr. Houstead then ordered that Ballard be transferred to DEC SNF for monitoring and that Ballard's hand be x-rayed. It was determined that Ballard had sustained a fracture of the fifth metacarpal, and that the fracture had not properly healed. "Ballard continued to experience severe bouts of dizziness and nausea. He remained confined to a wheelchair or [was] forced to utilize a walker to get around. Ballard also began to experience extreme pain in his hand resulting from the improperly healed fracture." (Filing No. 14, ¶ 10.) Ballard alleges that he "continues to experience constant pain, and his range of motion is severely hindered." (Filing No. 14, ¶ 11.) "He continues to experience dizziness and nausea." (Filing No. 14, ¶ 12.) Ballard alleges that "Danaher was deliberately indifferent to Ballard's medical needs when he refused to see Ballard in a timely manner, despite the serious nature of his injuries and the resulting symptoms. He was further deliberately indifferent to Ballard's needs when he failed to order appropriate testing upon seeing Ballard." (Filing No. 14, ¶ 14 (spelling corrected).) Ballard further alleges:

> Ballard experienced an objectively serious medical need as a result of Thurman's actions, which Defendant Danaher was deliberately indifferent to. Ballard was slammed to the ground by a gigantic staff member. His head was then slammed into the ground repeatedly and forcefully. Ballard complained to Danaher that his hand was broken, and it was reported to Danaher that Ballard had been vomiting when attempting to stand. These symptoms and the set of facts surrounding the cause are so obvious that even a layperson could easily recognize the need to attend to the injuries by conducting the de minimus of testing to discover the extent of the injuries. Danaher did not order scans or x-rays to determine if Ballard experienced fractures to either his hand

7

or head. He did not order a scan to determine if Ballard experienced an unseen brain injury. Danaher disregarded the warning signs, to wit, vomiting, dizziness, and headaches, which indicate traumatic brain injury. Danaher disregarded these known risks to Ballard's health. Danaher was not just negligent in his treatment of Ballard; he knowingly brought about a substantial risk to Ballard's health by allowing his brain injury to go untreated and allowing his fractured hand to heal without proper splinting.

(Filing No. 14, ¶ 18 (spelling corrected).) The court finds and concludes for purposes of initial review that the foregoing allegations contain sufficient facts to state a plausible claim against Defendant Danaher for deliberate indifference to Ballard's serious medical needs, in violation of Ballard's Eighth Amendment rights.

## IV. CONCLUSION

Ballard's Amended Complaint is not subject to dismissal upon initial review conducted pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.[2]

IT IS THEREFORE ORDERED:

1. The Clerk of the Court is directed to complete and issue three summonses for service on Defendants Counselor Thurman, Taggart Boyd, and Doctor Danaher <u>in their individual capacities only</u>. Defendants Thurman and Boyd may be served at:

Nebraska Diagnostic and Evaluation Center
3220 West Van Dorn Street
P. O. Box 22800
Lincoln, NE 68542

---

[2] The court cautions Ballard that this determination is based solely on the allegations in the Amended Complaint. The court has not made a determination on the merits of his claims or potential defenses thereto, nor are Defendants precluded from filing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendant Danaher may be served at:

> Lincoln Correctional Center
> 3216 West Van Dorn Street
> P. O. Box 22800
> Lincoln, NE 68542

3. The clerk of the Court is further directed to deliver the summonses, the necessary USM-285 Forms, copies of Plaintiff's Amended Complaint (Filing No. 14), and copies of this Memorandum and Order to the Marshals Service for service of process on Defendants. <u>The Marshals Service shall serve Defendants personally in their individual capacities.</u> Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Westlaw 2020).[3]

4. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

5. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

---

[3] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson,* 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

6. The Clerk of the Court is directed to set the following pro se case management deadline: November 9, 2020: check for completion of service of process.

Dated this 10th day of August, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge